IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 18-CR-251-GKF-1 |
| | ) |
| CHRISTOPHER R. PARKS, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Before the Court is Defendant Christopher Parks' Motion to Rescind Order of Revocation and Detention and supplement in support (ECF No. 267, 270), which were referred by United States District Judge Gregory Frizzell. Defendant seeks relief pursuant to 18 U.S.C. § 3142(f), which governs motions to reopen detention proceedings, and 18 U.S.C. § 3142(i), which governs motions for temporary release. The motion is denied.

**I.    Background**

Defendant was originally indicted on December 7, 2018. Defendant appeared by summons and was released on conditions pending his trial on December 19, 2018. By Superseding Indictment, Defendant was charged in Count 1 with conspiracy to offer and pay, and solicit and receive health care kickbacks, in violation of 18 U.S.C. §§ 371, 372; and in Count 25 with conspiring to commit health care fraud, in violation of 18 U.S.C. § 1349.

Defendant is scheduled for a joint trial with co-Defendant Dr. Gary Lee. On June 28, 2022, Dr. Lee moved to continue the trial for one year from August 2022 to August 2023, based on his health condition. Defendant did not oppose the motion and executed a speedy trial waiver. Also on June 28, 2022, the United States moved to sever the trial of Defendant from the trial of Dr. Lee, arguing that delaying the trial for a full year would prejudice the United States and deprive the

public of its interest in a speedy trial.  Defendant objected to the United States' motion to sever, arguing that Dr. Lee's inability to testify at Defendant's trial would hinder his defense.

On June 29, 2022, United States District Judge Claire Eagan granted Dr. Lee's motion to continue the trial to permit him to undergo medical treatments and reset the trial for August 2023.  ECF No. 212.  On September 21, 2022, Defendant was indicted in the Eastern District of Texas for conspiracy to commit wire fraud and conspiracy to commit money laundering, based on Defendant's alleged use of health care businesses to fraudulently bill insurance companies.  On September 21, 2022, the case was reassigned to United States District Judge Gregory Frizzell, who made minor changes to the scheduling order but maintained the August 2023 trial date.  ECF No. 226.  On October 3, 2022, Judge Frizzell denied the United States' motion to sever.  ECF No. 227.

On October 5, 2022, a Petition for Summons was issued by the undersigned based on the new charges against Defendant in the Eastern District of Texas.  ECF No. 231.  On October 10, 2022, the United States moved to revoke Defendant's bond.  ECF Nos. 234, 238.  After conducting an evidentiary hearing, the undersigned revoked Defendant's bond and detained him pending trial pursuant to 18 U.S.C. § 3148, ECF No. 250, and Judge Frizzell affirmed the undersigned's ruling following a de novo review in a thorough written decision, ECF No. 257.[1]  Judge Frizzell explained certain evidence supporting the detention order, including that (1) Defendant is under indictment in Texas for fraudulent submissions to insurance companies that resulted in at least $15 million in payments, including time periods while Defendant was on pretrial release; (2) Defendant is the target of an investigation in Florida for alleged health care fraud and kickbacks for which Defendant's businesses have allegedly received reimbursements totaling approximately $28 million, including time periods while Defendant was on pretrial release; (3) Defendant signed

---

[1] These orders are incorporated herein by reference and will not be repeated in their entirety.

2

credit agreements and guarantees without permission from the probation office while on pretrial release; and (4) Defendant often puts his businesses in the names of family members.  ECF No. 257 at 2-6.

## II.     Motion to Reopen – 18 U.S.C. § 3142(f)

A detention hearing "may be reopened" before trial upon a finding that "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."  18 U.S.C. § 3142(f).[2]

Defendant moves to reopen based on the following new information: (1) an update to a DOJ policy; (2) a potential delay of the August 2023 trial date; (3) a hernia diagnosis, and his susceptibility to COVID due to his age and obesity; (4) his willingness to abide by conditions of pretrial release and pledge his home as collateral; (5) the pretrial release conditions of other defendants accused of financial crimes, ECF No. 267 at 12-16; and (6) his desire to attend to his family due to the death of his brother-in-law and recent stroke of his brother, ECF No. 270.

### A.     DOJ Policy

The DOJ policy relied on by Defendant provides that prosecutors "should not seek detention merely because the Bail Reform Act permits such an argument to be made or presumes the detention, based on the charges, is appropriate," and should not seek detention "based solely upon the fact that the alleged violation is of the conditions of post-conviction supervision."  DOJ

---

[2] Although it is not clear from the statutory language, the Court concludes that a pretrial revocation proceeding conducted pursuant to § 3148 may be reopened pursuant to § 3142(f).  *See United States v. Alexander*, No. 1:17-CR-13-7 (WLS), 2018 WL 265578, at *4 (M.D. Ga. Jan. 2, 2018) ("The right to reopen a hearing contained in § 3142(f) is therefore also applicable to § 3148 proceedings.").  The United States does not argue otherwise.

3

Manual § 9-6.100.  Instead, the decision should be made on a case-by-case basis, after a weighing of all the facts and circumstances.  *Id.*

The Court finds no indication the United States failed to engage in a case-specific analysis in seeking revocation.  Instead, the United States sought revocation and detention only after it concluded Defendant posed an ongoing risk of financial danger to the community and was unlikely to abide by conditions aimed at protecting the community.  The United States represents that it would still seek revocation and detention even considering this new policy.  The new policy does not have a material bearing on the Court's detention analysis.

      **B.**      **Potential Trial Delays Beyond August 2023**

The Court finds that potential further trial delays do not warrant reopening the revocation proceeding.  According to Defendant, Dr. Lee has not started medical treatments and it is therefore "unlikely that a trial can be conducted in 2023."  ECF No. 267 at 9.  However, this is entirely speculative.  Dr. Lee has not filed a motion, the United States will likely oppose any such motion, Defendant may oppose the motion, and Judge Frizzell has not yet granted a continuance.  At this point, there are no new circumstances related to trial delays that warrant reopening the detention decision.

      **C.**      **Medical Conditions/Other Information**

Defendant also argues that his recent hernia diagnosis, his COVID susceptibility, his willingness to pledge his house and abide by stricter conditions, the release conditions of other defendants accused of financial crimes, and his need to attend to his family during times of need also warrant reopening the detention proceeding.  None of these facts, even if proven at an evidentiary hearing, constitute new information that has a material bearing on the Court's revocation analysis.

Defendant states that he desires a CT scan of his hernia to determine its level of severity, because he formerly had a strangulated hernia that caused severe health complications. However, Defendant does not make any particularized request for release for a scan on a specific date or with a particular physician. Instead, Defendant requests reopening the proceeding to determine whether he should be released for the entire remaining period before his trial. Although the Court accepts as true that Defendant cannot receive the scan in custody, this does not justify the broad relief Defendant seeks. This medical condition does not overcome the financial risks posed by Defendant's release or warrant reopening the proceeding. The Court has no reason to believe that the hernia condition would require long-term hospitalization or otherwise reduce the risks of Defendant forming new companies, violating conditions, and posing a significant financial danger to the community, as already found by the Court.

Defendant also cites his susceptibility to COVID-19 due to his age and obesity, and argues that his detention facility no longer has any protocol in place to prevent the spread of COVID-19. However, as argued by the United States, CoreCivic's website specifically provides a link to updates on their COVID-19 response through a weekly blog. *See* https://www.corecivic.com/covid-19-response, last visited February 14, 2023. Even assuming the jail is not taking certain precautions, Defendant admits that he has already contracted COVID-19 and has recovered. This weighs against a finding that his risk factors warrant release. *See United States v. Rudolph*, 582 F. Supp. 3d 804, 818 (D. Colo. 2022) (finding a defendant's arguments that he should be temporarily released based on specific risk factors to contracting COVID-19 moot after he had already tested positive and recovered). Further, as noted by a court in this circuit, the pandemic is now at a stage where vaccines have proven effective at reducing the severity of COVD-19, and there is a "growing consensus" that either receiving or refusing the vaccine weigh

against a finding of extraordinary circumstances in the "analogous compassionate release context." *Id.* at 818 n.7 (citing *United States v. Hald*, 8 F.4th 932, 936 n.2 (10th Cir. 2021)). The Court does not find that Defendant's COVID-19 susceptibility, or policies at his detention facility, have a material bearing on the issue of revocation.

The affidavits from Defendant and his wife state a willingness to pledge their residence worth approximately $750,000 as security for his compliance. Defendant also assures the Court he will not operate businesses or have signatory authority over bank accounts, and his wife agrees to serve as a third-party custodian. The affidavits, taken as true, do not have a material bearing on the revocation analysis. The undersigned and the district judge engaged in thorough analyses in revoking Defendant's release. Defendant had an opportunity to demonstrate he would avoid new law violations and follow conditions aimed at protecting the financial safety of the community pending his trial. However, a Texas grand jury found probable cause to indict him for new law violations allegedly committed while on release that resulted in at least $15 million in aggregate losses. Although the new law violation has not been proven, the statute specifically contemplates the relevance of a felony charge, for which there is probable cause, to the revocation decision. Further, the undersigned found Defendant's testimony regarding his failure to fully understand his prior financial conditions not credible, and the Court is not persuaded by any new assurances. Nor is the Court persuaded that a pledge of his home, or his wife serving as a third-party custodian, would cause Defendant to abide by conditions. Although Defendant argues that his proposed conditions "give near-absolute assurances that [Defendant] will abide by conditions of release and will eliminate any danger of harm to the financial community," ECF No. 267 at 29, these conditions are not so different than those originally imposed. Under the facts presented, the Court has wide discretion to reject these types of renewed assurances.

Defendant argues that other defendants posing greater financial risks to the community, such as Sam Bankman-Fried, are regularly released on conditions. Defendant is correct, and Defendant was also originally released on conditions. Here, Defendant was detained based not only on the originally charged conduct, but on further conduct that allegedly occurred while on pretrial release. The Court acted well within its discretion to detain this Defendant, particularly given the significant loss amount resulting from the alleged fraud, including fraudulent transactions while Defendant was on release, and the violations of this Court's conditions prohibiting credit transactions without court permission. Courts have detained based on financial danger, combined with an unlikeliness to abide by conditions, in similar circumstances. *See United States v. Dupree*, 833 F. Supp. 2d 241, 245 (E.D.N.Y. 2011) (explaining that court had previously revoked conditions of pretrial release on grounds of financial danger, where the defendant was accused of committing additional act of bank fraud against same victim while on pretrial release).

Finally, while it is regrettable that family members have died or fallen ill while Defendant is in custody, this does not justify revisiting the detention analysis or releasing Defendant indefinitely before trial.

**III.    Motion for Temporary Release – 18 U.S.C. § 3142(i)**

A "judicial officer may, by subsequent order, permit the temporary release" of a defendant if release is "necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). Whether to reopen a detention proceeding and whether to grant a temporary release are distinct questions. *United States v. Alderete*, 336. F.R.D. 240, 266 (D.N.M. May 21, 2020). However, the decision to grant temporary release is "intertwined with the factors" initially considered at the defendant's detention or revocation hearing, because such factors "are front and center in the judicial officer's mind as he or she decides how compelling the defendant's reason

for temporary release is." *Id.*

As an initial matter, the Court observes that Defendant does not seek a "temporary" release for any defined period. Defendant has not proposed a plan to seek medical treatment, attend to a family member's medical needs, or meet with his Texas or Oklahoma counsel for a specific period prior to trial. Instead, Defendant requests "temporary" relief for the five-month period pending his trial in August 2023, or any later trial date. Defendant must therefore show that a five-month period of release or longer is "necessary" to prepare his defense or for another compelling reason.

### A. Preparation of Defense

Defendant bears the burden of proving that temporary release is necessary for preparation of a defense, and the standard imposed "is one of necessity, not convenience." *United States v. Reese*, No. CR 11-2294 RB, 2012 WL 13081673, at *1 (D.N.M. Mar. 30, 2012). Courts have considered: (1) the time and opportunity defendant has to prepare for trial and participate in his defense; (2) the complexity of the case and volume of information; and (3) the expense and inconvenience associated with preparing while incarcerated. *See Alderete*, 336 F.R.D. at 267 (citations and internal quotation marks omitted). A court must only ensure a defendant is able to adequately prepare for trial, and a defendant's "comfort while preparing for trial is not the Court's concern." *Reese*, 2012 WL 13081673, at *1.

Defendant has not made any particularized showing as to why an additional five months out of custody is necessary to prepare for trial in this case. Defendant was on release for approximately four years prior to his revocation, and he had adequate time to review discovery and meet with counsel during this time. *See Dupree*, 833 F. Supp.2d at 249 (denying motion for temporary release where the defendant had prior access to counsel for significant time while previously released, but then was detained after being indicted on additional count of fraud). With

respect to the Texas case, Defendant states his counsel has met with him for only thirty minutes. But Defendant does not claim or attempt to show that his facility's telephonic or video-communication methods deprive him of his right to effective counsel or that they pose such a burden on him that release from detention is necessary. *See Rudolph*, 582 F. Supp. 3d at 818 (finding that defendant's conditions of confinement were not uniquely onerous such as to interfere with his ability to participate in his release); *Reese*, 2012 WL 13081673, at *3 (where counsel had access to meeting rooms, release not necessary to provide a more convenient or comfortable setting). Although his Texas counsel must travel to communicate with him in person, either counsel or Defendant would still have to travel for in-person meetings if Defendant was released. Further, although the Oklahoma and Texas cases are document-intensive, this cannot alone justify a § 3142(i) release. If so, the more complicated the crime, the more likely a temporary release would be granted. *See Dupree*, 833 F. Supp. 2d at 249 (complexity of case and volume of documents are not alone sufficient to justify temporary release). Defendant has not made the type of particularized showing necessary to justify a five-month or more period of temporary release to assist in his defense of this case or the Texas case.

    **B.**    **Medical Reasons**

Defendant's hernia condition and his increased susceptibility to COVID-19 due to age and obesity are not compelling reasons for a temporary release of five months or more pending his trial, for the same reasons explained above.

    **C.**    **Manifest Injustice**

Defendant also argues for release under § 3142(i), because his detention results in a manifest injustice. Specifically, Defendant argues (1) the Court misapplied legal standards under the Bail Reform Act; (2) Defendant did not receive adequate notice and process during the

revocation hearing; and (3) Defendant's period of pretrial detention is punitive and violates his due process rights. *See* ECF No. 267 at 13-24.[3]

### 1. Court Followed Correct Legal Standards

Defendant appears to argue that, because Defendant is not charged in Oklahoma or Texas with one of the offenses enumerated in § 3142(f)(1), and because he is not a flight risk, the Court erred by detaining him. Relevant to this argument, the statute governing available sanctions for violation of a release condition provides that "[a] person who has been released . . . and who has violated a condition of his release, is subject to a revocation of release, [and] an order of detention." 18 U.S.C. § 3148(a). Unlike 18 U.S.C. § 3142(f), the pretrial release revocation statute does not contain language limiting revocation and detention to particular cases. Further, the statute creates a presumption in favor of detention where there is probable cause to believe a defendant committed any federal, state, or local felony. 18 U.S.C. § 3148(b). Again, there is no language limiting this presumption to violent felonies. *United States v. Bartok*, 472 F. App'x 25, 29 (2d Cir. 2012) (explaining that presumption may be triggered by a probable cause finding as to a defendant's commission of any felony, regardless of whether the felony involves violence or threats). The undersigned, and Judge Frizzell on de novo review, had discretion to detain Defendant after making the required findings under 18 U.S.C. § 3148(b)(1) and (2) – including finding probable cause that Defendant had committed a fraud-based financial felony posing a financial danger to the community, finding clear and convincing evidence that Defendant violated other financial conditions, and finding that Defendant was unlikely to abide by conditions aimed at deterring fraud

---

[3] The Court addresses these as ground for relief under 18 U.S.C. § 3142(i), based on its understanding of Defendant's motion. To the extent Defendant also seeks to reopen the proceeding based on manifest injustice, the same analysis would apply. The Court finds no manifest injustice or legal errors that justify reopening the revocation proceeding under § 3142(f).

and financial dangers to the community. *See Dupree*, 833 F. Supp. 2d at 245 (explaining that court had previously revoked conditions of pretrial release on grounds of financial danger, where the defendant was accused of committing additional act of bank fraud against same victim while on pretrial release).

To the extent Defendant argues the United States failed to offer sufficient proof that Defendant was unlikely to abide by conditions of release under 18 U.S.C. § 3148(b)(2)(B), the Court rejects this argument for reasons already explained by the undersigned and Judge Frizzell. *See* ECF No. 250 at 4 (finding defendant unlikely to abide by conditions aimed at reasonably assuring the financial safety of the community); ECF No. 257 at 9 (summarizing evidence and concluding that, "even if such conditions existed, Mr. Parks is unlikely to abide by them").

Defendant's reliance on *United States v. Himler*, 797 F.2d 156 (3d Cir. 1986), is misplaced. In that case, the court held that a defendant could not be detained in the first instance, where his crime of using false identification did not meet the criteria for an order of detention under 18 U.S.C. 3142(f)(1), and where the record did not support a finding that no conditions would reasonably assure the defendant's appearance in court. *Id.* at 162. The trial court improperly considered the danger of committing another false identification crime in detaining the defendant; instead, the trial court should only have considered that type of danger in setting conditions of release. *Id.* Here, Defendant was originally released on conditions, as required by 18 U.S.C. § 3142, and was released for approximately four years. He was detained pursuant to 18 U.S.C. § 3148(b), only after being indicted on new financial fraud crimes allegedly committed while on release and after the United States demonstrated, by clear and convincing evidence, he violated financial conditions of release, and where the Court found he was unlikely to abide by conditions of release on an ongoing basis. To the extent Defendant contends a court cannot revoke a release

order of a defendant charged with financial or fraud crimes unless the defendant also presents a risk of non-appearance, the Court rejects this argument.

### 2. Defendant Received Adequate Process During Revocation Proceeding

The statute provides that the government "may initiate a proceeding for revocation of an order of release by filing a motion with the district court." 18 U.S.C. § 3148(b) (emphasis added). The statute does not state any requirements for the motion but instead instructs courts to conduct an evidentiary hearing. In the related context of a detention hearing pursuant to § 3142, a defendant must defend against all evidence presented regardless of whether such facts are in an indictment, complaint, or motion for detention. Defendant cites no authority that would require the Court to ignore evidence of violations of release conditions revealed at the hearing, simply because they were not alleged in the petition or the government's motion to revoke. Defendant's citation to case law in other contexts is not persuasive.

As to the process Defendant received, the Court conducted a hearing where Defendant was represented by counsel. Counsel conducted cross examination of both the government's witnesses. ECF No. 255 at 12, 21, 26. Counsel was provided the opportunity to conduct redirect examination of Defendant after the government elicited testimony related to violations of financial conditions. *See id.* at 78. Defendant did not request a continuance for more time to defend against the financial condition violations. Defendant received an additional layer of process in the form of de novo review upon his appeal to Judge Frizzell. Defendant's due process rights were not violated in relation to the 18 U.S.C. § 3148 revocation proceeding.

### 3. Defendant's Pretrial Detention Through August 2023 Does Not Violate His Due Process Rights

The Tenth Circuit has recognized that a valid period of regulatory pretrial detention may assume a "punitive character" and violate a defendant's due process rights if it is significantly

12

prolonged. *United States v. Theron*, 782 F.2d 1510, 1516 (10th Cir. 1986). However, there is no "bright line" rule as to when a pretrial detention becomes punitive, and the issue must be decided on a case-by-case basis. *Id*. In determining whether the length of pretrial detention has exceeded constitutional limits, courts consider "1) the length of detention; 2) the extent of the prosecution's responsibility for the delay of trial; and 3) the strength of the evidence upon which the detention was based." *United States v. Cos*, 198 F. App'x 727, 732 (10th Cir. 2006). Generally, delays caused by a defendant do not raise due process concerns. *See Theron*, 782 F.2d at 1516; *United States v. Taylor*, 602 F. App'x 713, 717 (10th Cir. 2015).

Defendant has been detained for approximately five months and will be detained five additional months based on the current trial date. Prior to his revocation, Defendant executed a speedy trial waiver, agreed to a continuance requested by a co-defendant, and opposed a severance the United States requested for the purpose of accelerating Defendant's trial. At all times during the original revocation proceeding and appeal, the undersigned and Judge Frizzell were aware of the August 2023 trial date and the likely ten-month period of pretrial detention resulting from revocation. Given the nature and seriousness of the alleged financial danger, the Court finds that a ten-month period is a necessary regulatory detention to protect the financial safety of the community. *See United States v. Kingston*, No. 218CR00365JNPBCW, 2019 WL 1200254, at *8 (D. Utah Mar. 14, 2019) (collecting cases holding that periods of detention well over one year did not violate due process). As to the remaining factors, the prosecution is not responsible for the trial delays, and the revocation decision was supported by significant evidence and affirmed by the district judge on de novo review.

**IV.     Conclusion**

Defendant Christopher Parks' Motion to Rescind Order of Revocation and Detention (ECF Nos. 267, 270), which is made pursuant to 18 U.S.C. § 3142(f) and (i), is DENIED.

**SO ORDERED** 22nd day March, 2023.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**