IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHRISTOPHER R. PARKS, )<br>)<br>Defendant. ) | Case No. 18-CR-251-GKF |

**OPINION AND ORDER**

This matter comes before the court on the Appeal of Magistrate Judge's Order Overruling Motion to Rescind Order of Detention and Release Revocation and Request for Hearing [Doc. 273] of defendant Christopher R. Parks.

**I. Background**

On December 7, 2018, a grand jury returned an Indictment charging defendant Mr. Parks with one count of Conspiracy to Offer or Pay Health Care Kickbacks, in violation of 18 U.S.C. § 371; and one count of Conspiring to Commit Health Care Fraud, in violation of 18 U.S.C. § 1349. [Doc. 3]. On June 12, 2019, a grand jury returned a Superseding Indictment charging Mr. Parks with one count of Conspiracy to Offer and Pay, and Solicit and Receive Health Care Kickbacks, in violation of 18 U.S.C. §§ 371 and 2; and one count of Conspiring to Commit Health Care Fraud, in violation of 18 U.S.C. § 1349. [Doc. 48]. Specifically, the Superseding Indictment charges that Mr. Parks conspired with his co-defendants to pay bribes and kickbacks to physicians to induce those physicians to refer patients to compounding pharmacies associated with Mr. Parks and his co-defendants so that Mr. Parks and his co-defendants could bill insurers, including federal government programs, for those prescriptions. [*See id.*]. The Superseding Indictment further

charges that Mr. Parks and his co-defendants billed these programs for claims in excess of $5 million. [*Id.*, p. 14]. One co-defendant pled guilty to one count of Soliciting and Receiving Health Care Kickback, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A). [Doc. 187]. Charges against a second co-defendant were dismissed in August 2020 upon motion by plaintiff. [Doc. 136]. There are two remaining defendants, and a jury trial is set for August 21, 2023.[1]

In early October, 2022, the government moved to revoke Mr. Parks's bond following his indictment in the Eastern District of Texas for Conspiracy to Commit Wire Fraud and Conspiracy to Commit Money Laundering. [Docs. 231, 234, 238]. After an evidentiary hearing on October 17, 2022, the Magistrate Judge revoked Mr. Parks's bond and ordered him detained pending trial. [Doc. 250]. Mr. Parks filed an Objection and Appeal of that order. [Doc. 251]. This court overruled the objection and upheld the Magistrate Judge's order after a *de novo* review. [Doc. 257].

On February 8, 2023, Mr. Parks filed a Motion to Rescind Order of Revocation and Detention to Permit Release Pending Trial and Request for Hearing pursuant to 18 U.S.C. § 3142(i) and 3148(b). [Doc. 267]. In his motion, Mr. Parks referenced "significant and compelling circumstances that were not previously considered by the Court that weigh in favor of granting Mr. Parks release on conditions pending trial." [Doc. 267, p. 5]. Because Mr. Parks raised the existence of new information, both the government and the Magistrate Judge considered Mr. Parks's motion as one filed pursuant to Section 3142(f), which provides that a detention hearing may be reopened at any time before trial if the judicial officer finds that "information exists that

---

[1] On June 29, 2022, District Judge Claire V. Eagan continued the jury trial from August 15, 2022, to August 21, 2023, on motion of co-defendant Gary Robert Lee so that Mr. Lee could seek treatment for a cancer diagnosis. [*See* Doc. 212]. The government moved to sever the trials of Mr. Parks and Mr. Lee and proceed with a jury trial against Mr. Parks on August 15, 2022. [Doc. 210]. Mr. Parks filed a Response in Opposition to the Motion to Sever [Doc. 216], and the court denied the motion. [Doc. 227].

was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure . . . the safety of any other person and the community." Mr. Parks also brought the motion pursuant to Section 3142(i), which authorizes the judicial officer to permit temporary release of a detained person. Mr. Parks presented the following as new information: a change in DOJ policies regarding pretrial detention; the likelihood that his trial will be further delayed due to issues with Mr. Lee's medical treatment; Mr. Parks's medical conditions—a hernia and the potential to contract COVID-19 while in custody; the fact that the only bank account over which he has signature authority is his and his wife's household account and his willingness to relinquish that authority; his willingness to not own or manage any business; his and his wife's willingness to pledge their home as security; and the fact that DOJ did not object to Sam Bankman-Fried—a defendant in a separate, well-publicized fraud case—being released on conditions. [Doc. 267]. He also argues the following: that he did not receive advance notice of an intention to revoke his release for any reason other than his Texas Indictment;[2] that being in custody interferes with his right to effective assistance of counsel; that no identifiable risk to the community has been articulated; that the court misapplied the Bail Reform Act by speculating on potential future harm; that the government did not seek detention in Texas; that it's likely he will comply with conditions of release; and that due to his detention he "is keenly aware that violations of pretrial release are to be taken seriously." He concludes by listing proposed conditions of release that he suggests will "eliminate any danger of harm to the

---

[2] The government moved to revoke Mr. Parks's release based on the Texas Indictment as a violation of Condition 1 of his release, which states "Defendant shall not commit any offense in violation of federal, state, or local law while on release in this case." [*See* Doc. 238, Doc. 17, p. 1]. In addition, based on the testimony presented during the October 17, 2022, Revocation Hearing, both the Magistrate Judge and this court found by clear and convincing evidence that Mr. Parks had violated Financial Condition (p)(4), which states "Defendant will . . . not make application for any loan or enter into any new credit arrangement, without first consulting the U.S. Probation Office," [Doc. 17, p. 3], and Financial Condition (p)(5), which states "Defendant will . . . not transfer, sell, give away, or otherwise convey any asset, without first consulting the U.S. Probation Office." [Doc. 17].

3

financial community." Mr. Parks added in a supplemental filing that he sought release to tend to his family due to the recent death of his sister's husband and a stroke suffered by his brother. [Doc. 270].

In response, the government contended that Mr. Parks's "detention should not be reopened under 18 U.S.C. § 3142(f) because he fails to identify new information that would have a 'material bearing' on whether there are conditions of release that will assure he will not pose a financial danger to the community," and that Mr. Parks should not be granted temporary release under 18 U.S.C. § 3142(i) "because he cannot show that his release is necessary for preparation of his defense or for another compelling reason." [Doc. 268].  In reply to Mr. Parks's supplement, the government argued that tending to family matters does not constitute "a compelling reason for his temporary release under 18 U.S.C. § 3142(i)." [Doc. 271].

On March 22, 2023, the Magistrate Judge denied Mr. Parks's motion in a written Opinion and Order. [Doc. 272]. Mr. Parks appealed the Magistrate Judge's Opinion and Order and requested a hearing. [Doc. 273]. The government responded on April 11, 2023 [Doc. 275], and Mr. Parks replied on April 15, 2023 [Doc. 276]. This court conducted a hearing on April 18, 2023, at which counsel presented oral argument and no additional evidence.

## II. MR. PARKS'S OBJECTIONS TO THE MAGISTRATE JUDGE'S OPINION AND ORDER

### A. Timeliness

Mr. Parks first argues that the Magistrate Judge did not conduct a prompt review as required by Fed. R. Crim. P. 59(a). Forty-two (42) days elapsed between the filing of Mr. Parks's Motion on February 8, 2023, and the Magistrate Judge's Opinion and Order on March 22, 2023. Rule 59(a) states "[a] district judge may refer to a magistrate judge for determination any matter that does not dispose of a charge or defense. The magistrate judge must promptly conduct the required

proceedings and, when appropriate, enter on the record an oral or written order stating the determination." In support, Mr. Parks cites *United States v. Fernandez-Alfonso*, 813 F.2d 1571 (9th Cir. 1987), in which the Ninth Circuit held, on the specific facts of that case, that a thirty-day delay was not "prompt" under 18 U.S.C. § 3145(b). In that case, the district court's normal practice was to hold such hearings within two or three days, and the thirty-day delay occurred inadvertently, presumably due to an oversight by the district court. *United States v. Fernandez-Alfonso*, 813 F.2d 1571, 1572 (9th Cir. 1987). As the government points out, 18 U.S.C. § 3145(b) deals with reviews of a magistrate judge's detention order. Here, Mr. Parks was detained, he appealed his detention order, and this court upheld the magistrate judge's order. Mr. Parks now seeks to rescind the previous order of revocation and detention. His citation to *Fernandez-Alfonso* improperly conflates 18 U.S.C. § 3145(b) with 18 U.S.C. § 3142(f) and (i). Mr. Parks did not identify any case law addressing alleged delay of a magistrate judge in ruling on a motion to rescind a previously affirmed order of revocation and detention.

Mr. Parks filed his Motion to Rescind on February 8, 2023. He filed a reply on February 23, 2023, and filed a supplemental brief on March 13, 2023 [Doc. 270], to which the government responded on March 20, 2023. The Magistrate Judge filed her fourteen-page Opinion and Order on March 22nd, only two days after briefing concluded on the Motion to Rescind. Under the facts of this case, this court finds and concludes that the Magistrate Judge's Opinion and Order on defendant Parks's Motion to Rescind was timely.

### B. Due Process

Mr. Parks contends he had no notice that he might be revoked for any reason other than his indictment in Texas. The government notes in response that Mr. Parks admitted at the detention hearing to violations of Financial Pretrial Release Conditions #4 and #5 by entering into new credit

5

agreements without first consulting the U.S. Probation Office and by conveying an asset, National Healthcare Partners, to his children without first consulting U.S. Probation. The government asserts it was unaware that Mr. Parks would take the stand and admit to violating those terms of pretrial release. Because the violations became known at the detention hearing, the government had no prior notice of the violations and could not have provided any such notice to Mr. Parks.

Because the government did not know that Mr. Parks would take the stand and admit to the violation of Financial Pretrial Release Conditions #4 and #5, this court finds and concludes that Mr. Parks's Due Process rights were not violated due to lack of notice.

### C. Review of a Magistrate Judge's Detention Order or Release Order Under 18 U.S.C. § 3142(f) and § 3142(i)

Mr. Parks brought his Motion to Rescind Order of Revocation and Detention "pursuant to 18 U.S.C. § 3142(i) [and] 3148(b) . . . ." [Doc. 267, p. 4]. The Magistrate Judge agreed that part of the motion was brought pursuant to § 3142(i), which governs motions for temporary release, but construed the remainder of Mr. Park's motion as seeking relief pursuant to 18 U.S.C. § 3142(f), which governs motions to reopen detention proceedings when the movant presents new information not known at the time of the initial hearing.[3]

Section 3142(f) provides:

> The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

---

[3] Title 18 U.S.C. § 3148(b) governs proceedings for revocation of an order of release. In contrast, Section 3142(f) applies to reconsideration of a detention or release order by the same judicial officer who entered the initial order. *United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003).

And Section 3142(i) provides:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

In *United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003), the Tenth Circuit analyzed Section 3142(f)'s text and held that review of a detention or release order is available only when the same judicial officer who entered the original order conducts such review and when new information arises.  ("By its terms, this section applies to reconsideration of a detention or release order by the same judicial officer who entered the initial order.").  "Accordingly, a district judge may not review a Magistrate Judge's detention order or release order based on new information under § 3142(f) -- only the judicial officer who holds a [detention] hearing may then reopen [the hearing], before or after a determination by the judicial officer, [or] at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing . . . ."  *United States v. Alderete*, 336 F.R.D. 240, 265 (D.N.M. 2020) (quoting 18 U.S.C. § 3142(f)) (internal quotation marks omitted); *see also*, *United States v. Ontiveros*, 2012 WL 13063630, at *1 (D. Colo. Feb 21, 2012) ("The Tenth Circuit has interpreted § 3142(f) to require that the same judge who conducted the detention hearing determine whether re-opening the hearing is appropriate.").

In *United States v. Anaya*, 376 F. Supp. 2d 1261 (D.N.M. 2005) the court explained that "[t]his straightforward reading of the statute serves the salutary purpose of preventing judge shopping by either party and prevents magistrate judges from being placed in the uncomfortable position of second-guessing their fellow magistrates, or district judges of second-guessing magistrates with information that the magistrates did not have." *Anaya*, 376 F. Supp. 2d at 1263 (internal quotations omitted).  On the basis of the foregoing caselaw, this court concludes it does

7

not have the statutory authority under 18 U.S.C. § 3142(f) to review the Magistrate Judge's detention order. The detention order may only be reviewed on appeal by the Tenth Circuit. *See Cisneros*, 328 F.3d at 614.

The Tenth Circuit has not resolved the open question of whether a district court has the authority to grant temporary release on a review under 18 U.S.C. § 3142(i) when a magistrate judge entered the initial detention order. *See Alderete*, 336 F.R.D. at 268; *United States v. Robertson*, 852 F. App'x 331, 337 n. 4 (10th Cir. 2021). Based upon the Tenth Circuit's construction of § 3142(f) in *United States v. Cisneros*, and §§ 3142(f) and 3142(i)'s textual similarities, this court concludes that § 3142(i) allows only the judicial officer who issues a pretrial detention order to later order a defendant's temporary release.

### D. Alleged Grounds for Release Pursuant to 18 U.S.C. §§ 3142(f) and 3142(i)

Even if this court has authority to review the Magistrate Judge's detention order, release is not warranted. Mr. Parks has not presented information "that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community" as required by 18 U.S.C. § 3142(f). Nor has he provided information sufficient to justify temporary release under Section 3142(i).

Mr. Parks presented the following alleged new information to Magistrate Judge Jayne in his Motion to Rescind [Doc. 267]: (1) an update to a DOJ policy regarding pretrial detention; (2) a potential delay of the August 2023 trial date; (3) a hernia diagnosis, and his susceptibility to COVID due to his age and obesity; (4) his willingness to abide by conditions of pretrial release and pledge his home as collateral; (5) the pretrial release conditions of Sam Bankman-Fried; and,

in his supplemental filing, (6) his desire to attend to his family due to the death of his brother-in-law and recent stroke of his brother.

Mr. Parks also attempts to re-litigate issues addressed by the magistrate judge in the initial detention hearing. This court addressed those issues in the order overruling Mr. Parks's Objection and Appeal of the Magistrate Judge's [Amended] Order of Revocation and Detention for Violation of Release Conditions [*See* Doc. 257, pp. 10-12] and need not readdress them here.

### 1. DOJ Policy

The DOJ policy relied on by Mr. Parks was updated in January 2023, which was after his initial detention hearing and is therefore "new information." It provides that prosecutors "should not seek detention merely because the Bail Reform Act permits such an argument to be made or presumes the detention, based on the charges, is appropriate," and should not seek detention "based solely upon the fact that the alleged violation is of the conditions of post-conviction supervision." DOJ Manual § 9-6.100. Instead, the decision should be made on a case-by-case basis, after a weighing of all the facts and circumstances. *Id.* As the Magistrate Judge stated in her Opinion and Order, there is no indication that the government or the court did not conduct a case-by-case review of the facts in Mr. Parks's prior detention reviews or that the government in any way violated this new DOJ policy by seeking to revoke Mr. Parks's release on conditions. [Doc. 272, p. 4].

### 2. Potential Delay of Mr. Parks's August 2023 Jury Trial

This case was previously set for jury trial in August 2022 and was continued to August 2023 on motion of co-defendant Mr. Lee so that Mr. Lee could seek medical treatment related to a cancer diagnosis. [Doc. 212]. Mr. Parks filed a speedy trial waiver associated with that continuance seeking to exclude the time until August 15, 2023. [Doc. 211]. Judge Eagan granted

the continuance and found the time until August 21, 2023, was excludable pursuant to 18 U.S.C. § 3161(h)(7). [Doc. 212]. Mr. Parks also opposed the government's contemporaneous motion to sever his trial from that of Mr. Lee arguing that persons who are indicted together should be tried together, that severance would thwart judicial economy, and that his defense may be impacted if Mr. Lee cannot testify at his trial. [Doc. 216]. This court denied the government's motion to sever. [Doc. 227]. Counsel for Mr. Parks represented during the April 18 hearing before this court that Mr. Lee has recently received a bone marrow transplant and needs to be in isolation for six to nine months as part of his recovery.

Mr. Lee has not filed a motion for a continuance beyond August 2023 or provided the court any update as to his health status. At this point, there is no motion before this court to continue the August 2023 jury trial. And Mr. Parks has not moved to sever so he may be tried separately.

### 3. Medical Conditions

Mr. Parks next points to a hernia diagnosis and his susceptibility to COVID-19 while detained due to obesity. Mr. Parks states he was diagnosed with a hernia while in custody and that he previously had a strangulated hernia that required him to be hospitalized for 9 days. He further states that the doctor who performed surgery on his previous hernia has said that a CAT scan is required to determine the exact nature and extent of the current hernia, and a CAT scan is not available while he is in custody. This information, even if substantiated, does not justify recission of the detention order, and Mr. Parks has not made a particularized request for temporary release for a CAT scan on a specific date or with a particular physician under Section 3142(i).

Mr. Parks contends that, because of his age and obesity, he is at a higher risk of contracting COVID-19 while in custody. He also states that he previously contracted COVID and recovered.

10

This information was available to Mr. Parks at the time of the initial hearing, and it does not have a material bearing on the court's revocation analysis.

### 4. Additional Conditions

Mr. Parks states he is willing to abide by conditions of pretrial release, have his wife serve as a third-party custodian, and pledge his home as collateral. He represents he currently has signature authority over only his and his wife's personal bank account and he is willing to relinquish that right. He also represents that he will not participate in owning or managing any business and he and his wife are willing to pledge their home as security.

The additional conditions proposed by Mr. Parks were options known to him at the time of the initial hearing and, in any event, do not have a material bearing on the court's revocation analysis because the Magistrate Judge and this court previously found that Mr. Parks violated his prior conditions of release and is unlikely to abide by any additional conditions. The conditions Mr. Parks proposes would not prevent him from using family members or others to open companies and commit fraud while technically in compliance with his conditions. In addition, this court does not take real property to assure the appearance of a defendant. Moreover, the Magistrate Judge did not base her decision to revoke on assuring Mr. Parks's appearance.

### 5. Comparison to Others

Mr. Parks points to the recent release on conditions of Sam Bankman-Fried, who is accused of committing billions of dollars' worth of fraud, as a relevant comparison to show that he too should be released on conditions. As the government points out, however, Mr. Parks was previously released on conditions and had that release revoked based on his violations of those conditions. Sam Bankman-Fried is therefore not an appropriate comparator.

### 6. Family Matters

Mr. Parks represented in his supplemental brief [Doc. 271] that family members have died or fallen ill while Mr. Parks has been in custody. Though unfortunate, such facts do not justify revisiting the Magistrate Judge's detention analysis or releasing Mr. Parks before trial.

### E. Preparation of Defense

Mr. Parks claims that pretrial detention interferes with his right to effective counsel because he is housed roughly 60 miles from the attorneys representing him before this court and 200 miles from the attorneys representing him in Texas. Because of the extensive discovery in both cases and the need to review that discovery in person, Mr. Parks claims he has not been able to sufficiently review discovery with his attorneys.

With respect to the case before this court, the Magistrate Judge pointed out that, while the discovery is extensive, Mr. Parks was on release for approximately four years prior to his revocation and had adequate time to review discovery with counsel during that time. As for the Texas case, the Magistrate Judge noted that Mr. Parks did not claim or attempt to show that his facility's telephonic or video-communication methods deprive him of his right to effective counsel or that they pose such a burden on him that release from detention is necessary. And although his Texas counsel must travel to communicate with him in person, either counsel or Mr. Parks would have to travel for in-person meetings if Mr. Parks was released.

### F. The Court's Application of the Bail Reform Act

Mr. Parks argues that the court misapplied the Bail Reform Act by ordering him detained because the crimes with which he has been charged are not among those listed in 18 U.S.C. § 3142(f)(1) and the government has not argued that he is a flight risk or a risk of obstructing justice under § 3142(f)(2). Mr. Parks was not ordered detained at his initial hearing; he was ordered

detained for a violation of his pretrial release conditions. The statute governing revocation of release is 18 U.S.C. § 3148. *See* 18 U.S.C. § 3148(a) ("A person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court."). Under § 3148, once the judicial officer finds probable cause that the person has committed a Federal, State, or local crime while on release—Mr. Parks's Texas Indictment satisfies this requirement, *see United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991)—or by clear and convincing evidence that the person has violated any other condition of release—the court found by clear and convincing evidence that he had violated two conditions of release related to the signing of personal guaranties and transfer of a company to his children—there is no longer a need to meet the requirements of 18 U.S.C. § 3142(f)(1) or (2) to obtain a detention hearing. The revocation hearing is held under § 3148 and, if § 3148(b)(1) is satisfied, as it was here, the court moves to an analysis of whether any condition or combination of conditions of release will assure that the person will not flee or pose a danger to the safety of any other person or the community using the factors in 18 U.S.C. § 3142(g). The court may also consider whether the person is unlikely to abide by any condition or combination of conditions of release. 18 U.S.C. § 3148(b)(2). Further, if the court finds probable cause to believe that the person has committed a Federal, State, or local crime while on release, as it did here based on Mr. Parks's Texas Indictment, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community.

Both the Magistrate Judge and this court properly followed the Bail Reform Act in revoking Mr. Parks's release. The court found that Mr. Parks was properly detained under 18 U.S.C. § 3148(b) only after he was indicted on new financial fraud crimes allegedly committed

13

while on release and after the United States demonstrated, by clear and convincing evidence, that he violated two financial conditions of release. After finding § 3148(b) satisfied, both the Magistrate Judge and this court reviewed the factors set out in § 3142(g) and found that no set of conditions exist that will assure the financial safety of the community. Both the Magistrate Judge and this court also found that Mr. Parks was unlikely to abide by any conditions imposed. These decisions were supported by the evidence on the record, including Mr. Parks's testimony at the first revocation hearing.

### G. Conclusion

This district court finds and concludes that it lacks the authority to release Mr. Parks pursuant to § 3142(f) or (i). And even if this court has the authority to do so, this court finds and concludes that Mr. Parks has not met the requirements of either statute. He has not presented new information "that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(f). In addition, Mr. Parks has not provided information sufficient to justify a temporary release under Section 3142(i). Nor has he persuaded the court that pretrial detention impermissibly interferes with his right to effective counsel, or that this court has misapplied the Bail Reform Act.

Accordingly, Mr. Parks's Appeal of Magistrate Judge's Order Overruling Motion to Rescind Order of Detention [Doc. 273] is dismissed for lack of statutory authority to address it. Alternatively, the appeal is denied.

DATED this 25th day of April 2023.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE